■ BENJAMIN RICHARDSON et al., Respondents, v RICHARD E. GRAY et al., Appellants, et al., Defendants. CHARIOT MANAGEMENT et al., Nonparty Appellants. (Action No. 1.) BENJAMIN RICHARDSON et al., Respondents, v RICHARD E. GRAY et al., Appellants, et al., Defendants. CHARIOT MANAGEMENT et al., Nonparty Appellants. (Action No. 2.) [707 NYS2d 436] —Orders (denominated orders and judgments), Supreme Court, New York County (Barry Cozier, J.), both entered January 8, 1999, which, in a shareholders' derivative action on behalf of defendant Chariot Group, Inc., insofar as appealed from, held appellants Richard E. Gray (Gray), Energy Saving Products, Inc. (ESP) and RAC Investors, Inc. (RAC) in civil contempt, unanimously affirmed, with costs.

As the motion court correctly held, the previously issued preliminary injunction clearly prohibits Gray, either directly or through any of the defendant corporations or other corporations he directly or indirectly owns or controls, from making any payments to himself, defendants or any other corporations he directly or indirectly owns or controls from funds obtained, directly or indirectly, from the stock, assets or revenues of defendant HomeStar, Inc. (ESP's predecessor), ESP or B.F. Rich Company, except for sums due and payable in the ordinary course of business pursuant to agreements already in effect. The record also supports the motion court's findings that Gray controlled Chariot Management, Inc. (Management), Chariot Investors, Inc. (Investors) and RAC Investors, Inc. In particular, Management's president's deposition testimony established that Gray is Management's chief executive officer and that it was Gray who authorized the offending payments made by

Management to Investors and RAC; Investor's 1995 certificate of incorporation identifies Gray as its sole director; and the 1996 amendment to VDC Recovery, Inc.'s (VDC) certificate of incorporation, changing its name to RAC, identifies Gray as RAC's chairman. Aside from being controlled by Gray, RAC would also have been prohibited from receiving the offending payment by reason of being a defendant, sued herein as VDC, its former name. It is clear that the payments made by Management to Investors and RAC were not in the ordinary course of business, when not even Management's president could say why the payments were made. Nor was the so-called dividend paid by ESP to Harcar, Inc. in the ordinary course of business. In this regard, we note that HomeStar answered the complaint after its merger into ESP without raising any jurisdictional objections; that ESP was owned and controlled by Gray, both while a subsidiary of Chariot Group and after Gray merged it with HomeStar; and thus, both as a company controlled by Gray and as a defendant, ESP was enjoined from making any payments not in the ordinary course of business. Even if, as ESP's chairman testified, the dividend was paid to facilitate a transaction intended to result in the acquisition of a controlling interest in a potential customer, such an acquisition, which represented a significant fraction of ESP's total assets, would have required board approval, and was clearly not in the ordinary course of business. Concur—Sullivan, P. J., Rosenberger, Ellerin, Lerner and Friedman, JJ.